## EXHIBIT 1

**Summons and Complaint**
**Barbara A. Dwulet v. Fifth Third Bank and Fiserv, Inc.**
**Civil Action No. 2009-CP-26-6882**

**[See Attachment]**

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF _Horry_ )

_Barbara A. Dunlet_ )

                    Plaintiff(s) ) CIVIL ACTION COVERSHEET

                              ) _2009_ -CP- _26_ - _6882_
                vs.           )
_Fifth Third Bank_ )
_Fiserv, Inc._ )
                    Defendant(s) )

(Please Print)
Submitted By: _Peter H. Rosenthal_     SC Bar #: _75645_
Address: _647 Pleasant St._            Telephone #: _617-571-7177_
_Weymouth, MA 02189_                   Fax #:
                                       Other:
                                       E-mail: _Phrinn@comcast.net_

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION  (Check all that apply)
### *If Action is Judgment/Settlement do not complete*

☑ **JURY TRIAL** demanded in complaint.      ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☑ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (*Check One Box Below*)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | ☐ Notice/ File Med Mal (230) | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | ☐ Other (299) | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | | ☐ Personal Injury (350) | ☐ Possession (450) |
| | | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured | ☐ Other (899) | ☐ Worker's Comp (960) |
| | Settlement Payment Rights | | ☐ Administrative Law Judge (980) |
| | Application (760) | | |
| | ☐ Other (799) | | |

| Special/Complex /Other | | |
|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Public Service Commission (990) |
| ☐ Automobile Arb. (610) | ☑ Unfair Trade Practices (640) | ☐ Employment Security Comm (991) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Other (999) |
| ☐ Other (699) | ☐ Sexual Predator (510) | |

Submitting Party Signature: _Peter H. Rosenthal_     Date: _7/14/09_

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina    Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (03/09)                                    Page 1 of 2

## FOR MANDATED ADR COUNTIES ONLY

Allendale, Anderson, Beaufort, Colleton, Florence, Greenville,
Hampton, Horry, Jasper, Lexington, Pickens (Family Court Only), and Richland

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1.  The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2.  The initial ADR conference must be held within 300 days after the filing of the action.

3.  Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4.  Cases are exempt from ADR only upon the following grounds:

    a.  Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b.  Requests for temporary relief;

    c.  Appeals

    d.  Post Conviction relief matters;

    e.  Contempt of Court proceedings;

    f.  Forfeiture proceedings brought by governmental entities;

    g.  Mortgage foreclosures; and

    h.  Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5.  In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6.  Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA          IN THE COURT OF COMMON PLEAS
COUNTY OF HORRY

Docket # 2009-CP-26-6882

BARBARA A. DWULET,                    )
                                      )
      PLAINTIFF                       )
                                      )
VS.                                   )
                                      )
FIFTH THIRD BANK                      )     SUMMONS
AND                                   )
FISERV, INC.                          )
                                      )
      DEFENDANTS                      )
                                      )

TO THE DEFENDANTS ABOVE NAMED:

      YOU ARE HEREBY SUMMONED and required to answer the Complaint
herein, a copy of which is herewith served upon you, and to serve a copy of your answer
upon counsel, at his office at 647 Pleasant St., Weymouth, Massachusetts, 02189, within
thirty (30) days after service upon you, exclusive of the date of serve. If you fail to
answer the Complaint within that time, the Plaintiff will apply to the Court for the relief
demanded and judgment by default will be rendered without hearing.

                         Respectfully submitted,


                         Peter H. Rosenthal
                         Counsel for Plaintiff
                         S.C. Bar # 75645
                         Address and Telephone:
                         647 Pleasant St.
                         Weymouth, MA 02189
                         (617)571-9177


Dated this 7th day of July, 2009

STATE OF SOUTH CAROLINA             IN THE COURT OF COMMON PLEAS
COUNTY OF HORRY
                                    Docket # 2009-CP-26-6882

                                    )
                                    )
BARBARA A. DWULET,                  )
                                    )
       PLAINTIFF                    )
                                    )
VS.                                 )    **COMPLAINT**
                                    )
FIFTH THIRD BANK                    )    **JURY TRIAL DEMANDED**
AND                                 )
FISERV, INC.                        )
                                    )
       DEFENDANTS                   )
                                    )


Comes now the Plaintiff, Barbara A. Dwulet, and for her

Complaint states as follows:


**Jurisdiction and Venue**

1. This Complaint is filed pursuant to:


a. the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

sections 1681 et seq., to recover damages sustained by

Plaintiff and to recover the costs of suit, including

reasonable attorneys' fees, for the injuries that Plaintiff

sustained as a result of the Defendants' violations of

those laws.

1

b. the South Carolina Unfair Trade Practice Act prohibiting unfair or deceptive acts or practices in the conduct of any trade or commerce.

c. Negligence.

2. The Court has jurisdiction over the state claim under the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. Section 39-5-20(a) and the FCRA claim under 15 U.S.C. §§ 1681p that states an action to enforce any liability created thereunder to any court of competent jurisdiction.

3. Venue is proper in this Court of Common Pleas as the Plaintiff is a resident of Myrtle Beach within the County of Horry and it is based upon claims arising from transactions occurring in the county.

**THE PARTIES**

Plaintiff

4. Plaintiff Barbara A. Dwulet is domiciled in Myrtle Beach, South Carolina and obtained certain mortgages from R-G Crown Bank. R-G Crown Bank was acquired by Defendant

2

Fifth Third Bank. Plaintiff was damaged by the actions of defendants as alleged in this Complaint.

Defendants

5. Defendant Fifth Third Bank is an FDIC insured financial institution organized under the laws of Ohio, with its principal place of business at 1404 East Ninth Street, Cleveland, Ohio, 44114. During the time period covered by this Complaint, Defendant Fifth Third Bank furnished false information to consumer reporting agencies regarding mortgage obligations of the Plaintiff.

6. Defendant Fiserv, Inc. is a business entity organized under the laws of Wisconsin, with its principal place of business at 255 Fiserv Drive, Brookfield, Wisconsin 53045. During the time period covered by the Complaint, Defendant Fiserv, Inc., pursuant to agreement with Defendant Fifth Third Bank was to transmit credit information about active mortgage documents assumed from R-G Crown Bank to consumer reporting agencies.

3

**PLAINTIFF ALLEGATIONS**

7. Plaintiff and her husband, Richard, obtained three mortgages from R-G Crown Bank prior to 2006, each originating at different times and dates and secured by real estate of Plaintiff located in Allentown, Pennsylvania.

8. All three mortgages referred to in paragraph 7, above, were satisfied and acknowledged by R-G Crown Bank as satisfied by payment in full by the Plaintiff and her husband by 2006 and none of the said mortgages was ever delinquent.

9. In approximately November of 2007, a date long after the above referred mortgages were satisfied, Defendant Fifth Third Bank acquired R-G Crown Bank including all of its assets and obligations.

10. Pursuant to its said acquisition, Defendant Fifth Third Bank contracted with and authorized Defendant Fiserv, Inc. to collect, assemble and furnish to the major consumer credit agencies, including TransUnion, credit information

4

relating to active mortgages held by Fifth Third Bank as a result of acquiring R-G Crown Bank.

11. At a date approximately concurrent with the said acquisition, Fiserv, Inc., on behalf of Fifth Third Bank, furnished false and inaccurate credit information to major consumer credit agencies concerning thousands of mortgages, both current and satisfied, held by R-G Crown Bank.

12. Among the falsely furnished mortgage information were the Plaintiff and her husband's duly satisfied three mortgages, that were reported to major consumer credit agencies as seriously delinquent (contrary to the accurate information that these said mortgages had been paid in full and were never delinquent).

13. Soon after Fiserv, Inc. furnished the above referred to false information to the major consumer credit agencies, both Fiserv, Inc. and Fifth Third Bank learned that Fiserv, Inc. had in fact furnished false, inaccurate and damaging credit information to the major consumer reporting agencies concerning thousands of mortgages held by R-G Crown Bank at the time Fifth Third Bank acquired R-G Crown Bank.

5

14. Despite learning the information referred to above, neither Fiserv, Inc. nor Fifth Third Bank properly removed the said damaging information, nor did either inform the Plaintiff or other similarly situated consumers about the falsely transmitted information.

15. Defendants Fifth Third Bank and Fiserv, Inc. with willful intent and with malice, knowing their actions would damage former R-G Crown Bank mortgagors, decided not to inform the Plaintiff or any similarly situated consumers about the falsely transmitted information.

16. Defendants Fifth Third Bank and Fiserv, Inc. both knew or should have known that by furnishing inaccurate and harmful credit information concerning consumers to the major consumer credit agencies that those consumers, including the Plaintiff, would suffer damage to their credit scores and their reputations. Defendants' intentional actions not to inform the said consumers, including the Plaintiff, immediately upon learning of the furnishing of false information were unreasonable.

17. Defendant Fifth Third Bank, upon learning of its error in furnishing false information to the major consumer

6

reporting agencies, consciously decided not to inform the affected consumers, including the Plaintiff, knowing that their credit scores would be damaged by the said false information, maliciously calculating that the First Third Bank may be protected from litigation under the safe harbor provisions of the Fair Credit Reporting.

18. On January 23, 2008, Plaintiff sought to refinance the first mortgage loan on the Myrtle Beach residence owned by Plaintiff and her husband. For this purpose, Plaintiff went to a Wells Fargo Mortgage office in Myrtle Beach and applied for a new first mortgage loan.

19. Plaintiff sought the said refinancing to lower the interest rate, said lower rate then available based upon her excellent credit score. At the time she applied, Plaintiff believed her credit score with the major consumer reporting agencies was over 800 and contained no damaging credit information.

20. As part of the application process on January 23, 2008, the Wells Fargo loan officer ran a credit check with TransUnion on the Plaintiff. TransUnion reported back to the loan officer that Plaintiff's credit score was 725 and

that her credit report showed several serious delinquent payments due on three outstanding R-G Crown Bank mortgages. The loan officer then gave the Plaintiff the loan numbers on the reportedly delinquent loans and a contact phone number to call the mortgage holder of those loans.

21. Plaintiff told the Wells Fargo loan officer that she had no delinquent loans and that the R-G Crown Bank mortgages were paid off, but the loan officer didn't believe her stating "credit reports are rarely wrong".

22. Plaintiff left the loan office extremely upset, confused and embarrassed. Plaintiff immediately called the phone number given her by the loan officer regarding the loans.

23. The said telephone number was for the Defendant Fifth Third Bank. Plaintiff spoke with several representatives there, none of whom gave her any relevant information and they were unable to locate any outstanding and/or delinquent loans to the Plaintiff and her husband.

24. Plaintiff, on January 24, 2008 called TransUnion to dispute the delinquencies on her credit report and also formally filed a dispute claim.

25. TransUnion duly notified Defendant Fifth Third Bank of the dispute notice it received from the Plaintiff.

26. Plaintiff, from January 23, 2008 until February 9, 2008 continuously communicated with the Defendant Fifth Third Bank, without getting any rational explanation from Fifth Third Bank other than that the falsely reported delinquencies were probably accurate (which they were not).

27. Plaintiff, pursuant to her own research, despite constant and continued stonewalling by Defendant Fifth Third Bank, found on the internet that there had in fact been problems (known to the Defendant since November of 2008) related to misreporting of mortgage accounts taken over from R-G Crown Bank.

28. On or about February 9, 2008, Plaintiff contacted a news writer whose article on Fifth Third's mortgage mess was reprinted on the internet. He gave Plaintiff the name and telephone contact of Doug Pennington, a Fifth Third

Bank employee who was handling press inquiries into the false delinquency problems. Plaintiff immediately called Pennington.

29. On February 13, 2008, Pennington admitted to Plaintiff that false information had in fact been furnished to consumer credit reporting agencies regarding mortgages of R-G Crown Bank but glibly claimed that no falsely reported delinquencies went to TransUnion and claimed that he could not locate any dispute notice received by Fifth Third Bank regarding Plaintiff from TransUnion. Despite Plaintiff's pleas to Pennington to help clear up the problem so she could refinance her loan and rebuild her reputation, he refused to do anything.

30. The non action of Pennington on behalf of Defendant Fifth Third Bank was calculated and intentional although Defendant knew or should have known that Plaintiff's problem was caused by it and Fiserv Inc. furnishing false information to the major consumer reporting agencies.

31. Pennington in fact knew or should have known that a notice of dispute was made by Plaintiff to TransUnion on January 24, 2008 and that prompt notice thereof was

provided to Fifth Third Bank by TransUnion in compliance with 15 USC section 1681i(2)(a).

32. Plaintiff, on February 14, 2008, contacted the Federal Reserve Bank and made a formal complaint against Fifth Third Bank.

33. On February 20, 2008, Pennington, as the representative of Fifth Third Bank, telephoned the Plaintiff and informed her that Fifth Third Bank had been contacted by the Federal Reserve Bank. Pennington, for the first time, attempted to communicate with TransUnion.

34. At least until February 20, 2008, Fifth Third had done nothing, in the face of its knowledge of the thousands of falsely reported R-G Crown Bank mortgages and despite the requirements of the Fair Credit Reporting Act, 15 USC 1681s-2(b)(1) to: conduct an investigation with respect to the disputed information, i.e. the falsely reported loan delinquencies of the Plaintiff; to review all relevant information provided by Plaintiff to TransUnion; to report the results thereof to TransUnion; and to delete or permanently block the false information.

35. TransUnion, on or about February 21, 2008, without receiving any response from Fifth Third Bank, removed certain derogatory information from Plaintiff's credit report, but continued to report an "open dispute" for the mortgages in question causing derogatory information to remain visible to creditors. The report of "open dispute" was a direct result of Defendant Fifth Third Bank not carrying out its responsibilities under 15 USC 1681s-2(b)(1) despite the requirements of that paragraph.

36. On February 25, 2008, TransUnion removed the open dispute language pursuant to 15 USC 1681i (a) (5).

37. By the time the Plaintiff's credit had been repaired, she and her husband had lost out on the lower interest rates and as a direct result of the actions of the Defendants, suffered economic loss as well as embarrassment, depression, mental anguish, humiliation and emotional distress.

38. Doug Pennington falsely, and with the intent to deceive the Plaintiff into believing the Defendant promptly investigated, sent her a letter on March 3, 2008 stating that he worked diligently since February 13, 2008 in

verifying that the Plaintiff's credit report with TransUnion had been corrected. Pennington didn't contact TransUnion until at least February 20, 2008(after he had received a communication from the Federal Reserve Bank). The dispute remained "open" until February 25, 2008 when it was closed pursuant to the statutory language in the Fair Credit Reporting Act, not as a result of any investigation by Defendant Fifth Third Bank.

39. In further support of Plaintiff's claim that Defendant Fifth Third Bank failed to promptly investigate is the false claim by Pennington that on February 13, 2008, the Bank emailed a letter to Plaintiff correcting the unfavorable credit information on Plaintiff's TransUnion credit report. In fact, no letter was sent to Plaintiff until April 4, 2008, when Pennington sent an email to Plaintiff with an attachment document he described as a "recreation" of the "standard letter issued once a credit bureau correction is completed".

40. As a direct and proximate result of the actions of the Defendants, the Plaintiff suffered the loss of her ability to refinance the mortgage loan on her and her husband's

home at a favorable rate significantly less than their current mortgage.

41. As a direct and proximate result of the actions of the Defendants, the Plaintiff suffered embarrassment, depression, mental anguish, humiliation and emotional distress.

## NATURE OF TRADE AND COMMERCE

42. Throughout the period of time covered by this Complaint, Defendant Fifth Third Bank has engaged in the trade and commerce of banking including mortgage lending and services related thereto.

43. Defendant Fifth Third Bank utilized the services of Defendant Fiserv, Inc. to transmit mortgage documents to major consumer reporting agencies.

44. Throughout the period of time covered by the complaint, Defendant Fiserv, Inc. has engaged in the business of providing integrated information management systems and services, including transaction processing, business

process outsourcing, document distribution services, and software and systems solutions.

45. Both Defendants furnished information to major consumer reporting agencies concerning mortgages held prior to November of 2007 by R-G Crown Bank and assumed by Fifth Third Bank when R-G Crown Bank was taken over by Fifth Third Bank in November of 2007.

## DEFENDANTS' ILLEGAL CONDUCT

46. The furnishing by the Defendants of false information, harmful to the Plaintiff and several thousand other mortgagors similarly situated has an adverse effect on the public interest.

47. The furnishing by the Defendants of false information, harmful to the Plaintiff and several thousand other mortgagors similarly situated and the failure to correct the said false information and the failure to notify the consumers affected thereby was done with the knowledge that said information was false or with reckless disregard of whether or not it was false.

48. The Defendants, upon discovering that they furnished false information to major consumer reporting agencies, harmful to the Plaintiff and other mortgagors similarly situated, consciously determined not to notify the Plaintiff and others, despite the deleterious effect of the false information. Said determination was made upon their belief that the Defendants would be protected from legal responsibility by the safe harbor provision of the Fair Credit Reporting Act.

49. The Defendant, Fifth Third Bank, by its employee Douglas Pennington, knowingly and with willful and malicious intent to injure the Plaintiff, falsely claimed that it sent a correspondence to the Plaintiff on February 13, 2008 correcting the errors it furnished to the major consumer credit agencies and further by falsely claiming that it was investigating the dispute made by the Plaintiff to TransUnion.

50. Defendant Fifth Third Bank, after having been notified on or about January 24, 2008 by TransUnion of a dispute by Plaintiff concerning false information forwarded by Defendants to TransUnion , failed to properly investigate

and take remedial action as required under 15 USC section 1681s-2(b).

51. Defendants knew, within days of transmitting false information, that false and harmful information had been transmitted to the major credit reporting agencies by Fiserv, but did not take reasonable steps to repair the credit of thousands of consumers, including the Plaintiff.

## INTENTIONAL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

52. A private claim under the Fair Credit Reporting Act pursuant to 15 USC section 1681s-2(b) arises against furnishers of information, such as the Defendants if, after receiving notice of a dispute, furnishers fail to properly investigate the dispute or to correct improperly reported debts.

53. Defendants, after notification of Plaintiff's dispute from TransUnion, failed to properly investigate or correct the inaccurate information it supplied concerning the Plaintiff.

54. As a result of Defendants willful and intentional violations of said section 1681s-2(b) Plaintiff suffered

money damages as well as embarrassment, humiliation and emotional distress.

55. Section 1681n of the Fair Credit Reporting Act provides for actual damages, punitive damages and reasonable attorney's fees for willful violations of the FCRA.

**VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT**

56. Plaintiff claims that the Defendants have acted unfairly and deceptively against the Plaintiff and all other consumers of the Fifth Third Bank similarly situated thereby impacting the public interest.

57. The procedures carried out against the Plaintiff create potential for repetition against those consumers similarly situated.

58. The unfair and deceptive acts of Defendants were the proximate cause of Plaintiff's damages.

59. Plaintiff, as a result of the unfair and deceptive acts of the Defendants has suffered the loss of money (denied

lower interest rate on loan) as well as embarrassment, humiliation and emotional distress.

## NEGLIGENCE CLAIMS

60. Defendants owed a duty of care to the Plaintiff in that Defendants have a duty to report accurate information to the credit reporting agencies, especially after knowing of the transmition of false information shortly after acquiring R-G Crown Bank. In fact, the Defendants after discovering that false information was transmitted consciously decided not to notify the Plaintiff or those similarly situated.

61. The Defendants by their actions were negligent in not notifying the Plaintiff as soon as they determined their error.

62. The Plaintiff suffered money damages as a proximate result of the omissions by the Defendants.

63. The negligent acts described above took place before the Defendants were notified by TransUnion of Plaintiff's

dispute and as such is not preempted by the Federal Credit Reporting Act.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays:

a. That the court enter judgment for the Plaintiff;

b. Find that the Defendants willfully violated the Federal Credit Reporting Act;

c. Require Defendants to pay actual, consequential and punitive damages sustained and reasonable attorney's fees pursuant to the Federal Credit Reporting Act;

d. Find that the Defendants violated the South Carolina Unfair Trade Practices Act;

e. Require Defendants to pay actual, consequential and punitive damages sustained and reasonable attorney's fees pursuant to the South Carolina Unfair Trade Practices Act;

f. Find that the Defendants in continuing to furnish false information to the consumer credit agencies were

acting with malice and willful intent to injure the

Plaintiff;

g. Find that the Defendants acted negligently and said

negligence was the proximate cause of Plaintiff's

damages hereunder;

h. Make such other findings as the court deems proper;


**JURY TRIAL DEMANDED**


The Plaintiff

By Her Attorney

Peter H. Rosenthal SC Bar #75645
647 Pleasant St.
Weymouth MA 02189
(617)571-9177


Dated July 7, 2009


21

Date: 8-10-09
Time: 10:15am
Maner: HAND
All-Pro Investigations